## David Herrick v. Margaretta J. Herrick.

*Divorce: Adultery: Evidence.* Evidence in general terms as to continuous acts of adultery, which does not place dates or descriptions in such a way as to enable the charges to be identified by time, place or circumstance, will not support a decree for divorce.

*Divorce: Adultery: Evidence: Witnesses.* It would not be proper to grant a divorce on the ground of adultery, upon the unsupported evidence of one who has sworn to such a shameless course of conduct between defendant and himself as courted no concealment, and must have been observed by others, if true, and whose cross-examination shows him to have been guilty of manifest falsehood under oath in several material particulars, and where the witnesses brought in to corroborate him rather contradict than confirm his testimony.

*Divorce: Adultery: Evidence.* Where a husband first filed a bill for divorce on the ground of cruelty, and afterwards abandoned that ground and by amendment set up adultery, and in his first bill set out as the principal item of cruel treatment the very facts growing out of an attachment between his wife and another of an extreme and discreditable character, upon which, in his amended bill, he based a charge of adultery, and where the proofs showed that he knew of the whole relations between his wife and such other person, and indicated that he probably connived at, and furthered their conduct, a decree should not be granted except upon facts and circumstances *pointing very clearly to adultery.*

*Heard January 28. Decided January 29.*

Appeal in Chancery from Kent Circuit.

*Champlin, Butterfield & Fitzgerald*, for complainant.

*Norris, Blair & Stone*, for defendant.

HERRICK v. HERRICK.

CAMPBELL, J.

The bill in this case was filed for a divorce, originally for cruelty, which was abandoned, and by amendment for adultery, which is alleged to have been committed with Charles Robens on or about the 5th of July, 1871, and the 15th and 22d of December, 1871; and with William Andrew on the 30th of August and 8th of October, 1872.

Robens was sworn at length, and did not identify any of the acts charged except that on the 5th of July. He swore to a considerable and almost continuous misconduct with him, but did not place dates or descriptions in such a way as to enable the charges to be identified by time, place or circumstance.

The incident of the 5th of July he alleges to have taken place in the complainant's barn. He is very vague as to the exact time, but thinks it was immediately after dinner, which is the time fixed by the other witnesses who swore to her going to the barn. He swears to her staying there most of the afternoon, and that after a little while he went into the barn and went up, at her request, into the loft where she was.

The corroborating witnesses are Southwick and Ettie Hodges. The former's evidence describes defendant's coming and going as within a much shorter interval, and one inconsistent with Roben's story. It appears from Ettie Hodges that defendant was in the habit of taking a nap in the barn in hot weather, and that she was there about an hour. There is nothing in the testimony of either witness which really corroborates Robens as to any fact except as to her being in the barn. In all other respects they contradict rather than confirm him in details. Southwick's account of seeing Robens does not confirm his story.

The testimony of Robens as tested on cross-examination shows him to have been guilty of manifest falsehood under oath in several material particulars, and it would not be proper to convict defendant of any offense depending chiefly

on his testimony. If his statements in regard to defendant's general behavior are accepted, they show a most remarkable growth of depravity between a boy and a woman acting almost in the place of a mother; and such open and shameless conduct between them as courted no concealment, and could not have been unknown to complainant very long if actually existing.

There is no proof whatever of the acts charged specifically against Andrew.

It does appear that there was an attachment between defendant and Andrew of an extreme and discreditable character, and that she wanted to marry him. This was known to her husband during its whole course, and long before he filed his bill. He sets it out as the principal item of cruel treatment, and the facts set up in the original bill cover similar ground with all the substantial items of proof claimed to have been evidence of adultery under the amendments. We find no proof going in significance beyond what was always known to complainant, and not supposed to have indicated adultery. And the statements in his amended bill, as to the time of any discovery of Andrew's conduct, are plainly untrue.

We have also been strongly impressed by a multitude of circumstances, that the complainant not only knew of the whole relations between his wife and Andrew, but was quite willing that they should unite their futures, if he did not actually connive at and further the conduct of Andrew. We place no reliance on Andrew's testimony, but the testimony of complainant's witnesses renders it probable if not certain, that he and Andrew had an understanding. It is difficult to account for his conduct otherwise.

The facts are too disgusting to dwell on, and the conduct of defendant shows her in a very bad light, but we do not think the complainant shows himself entitled to ask a divorce, or that he has proved the only well pleaded charges, which he must have originally made on definite information as to time and place, if made in good faith.

It must be presumed this would have been given in evi-
dence as far as it was reliable or plausible; but the proofs
are very much at large.

The decree must be reversed, and the bill dismissed, with
costs of this court, and an allowance of two hundred dol-
lars to counsel who argued the case in this court.

GRAVES, CH. J., and COOLEY, J., concurred.

CHRISTIANCY, J., did not sit in the case.