COOK *v.* COOK.

DIVORCE—WHERE BOTH PARTIES GUILTY NEITHER ENTITLED TO DECREE.

Where both husband and wife have contributed to the cause of estrangement that exists between them neither is entitled to a decree of divorce.

Appeal from Gogebic; Driscoll (George O.), J. Submitted October 24, 1928. (Docket No. 158, Calendar No. 33,737.) Decided January 7, 1929.

Bill by Lillian J. Cook against William H. Cook for a divorce. Defendant filed a cross-bill for a divorce. From a decree for defendant, plaintiff appeals. Reversed, and bill and cross-bill dismissed.

*E. W. Massie,* for plaintiff.

*William G. Cloon,* for defendant.

McDonald, J. This is an appeal from a decree of the circuit court of Gogebic county, Michigan, granting the defendant a divorce. The parties were married on January 12, 1892, and lived together in the city of Ironwood, Michigan, until June 18, 1926. One child, a daughter, now 34 years of age, was born of the marriage. The plaintiff is 54 years old and the defendant 59. She filed her bill on August 12, 1926, charging cruelty consisting of intoxication, remaining out nights, consorting with lewd women, personal violence, improper language, and nonsupport. The defendant filed a cross-bill, in which he alleged cruelty consisting of nagging, fault finding, refusal to cohabit, accusing him of consorting with lewd women, intoxication, and personal violence. The court granted the defendant a decree on his cross-bill. The plaintiff has appealed.

We have carefully read the record and the briefs of counsel. Our conclusion is that neither of these parties is entitled to a decree for a divorce. For several years during their married life, the plaintiff conducted a gift shop in her home, in which business she was very successful. The defendant had quit the barber business, in which he was engaged at the time of their marriage, and had become a salesman. He was not successful. His failure and her success seems to have developed in the plaintiff a superior-

ity complex. She was not backward in reminding him of it. She testified:

"Yes, I did say that my husband didn't have any backbone; that I was his backbone, and that he didn't do anything without me, and that he was a failure. I perhaps said that on many occasions."

Undoubtedly the defendant was hurt by these frequent reminders that he was a failure. At least such statements did not tend to peace and harmony in the home.

Another incident indicating cruel treatment on the part of the plaintiff was the destruction of pictures of the defendant's family. Of this she testified:

"*Q.* What did you do with the picture of Mr. Cook's father?

"*A.* I threw all pictures of the family out.

"*Q.* Where did you throw them?

"*A.* Out on the garbage.

"*Q.* In the garbage can?

"*A.* Yes.

"*Q.* Did you take pains to destroy the pictures or did you put them in a position in the garbage can so that every one passing by could see them?

"*A.* Well, they couldn't very well crowd in.

"*Q.* They were very large pictures?

"*A.* Well, they happened to be large pictures.

"*Q.* How large would you say?

"*A.* Well, I don't know; about two feet square."

There is also testimony that she threatened to shoot the defendant. He told the sheriff, who went to the home and found an unloaded gun under the mattress of the plaintiff's bed. She testified:

"In June, 1926, I told Mr. Cook that I would put a bullet through him. I reproved him about going out, but there was no heated discussion when I went down stairs the evening before from the second to

the first floor with a flashlight. I might have struck him on the head with the flashlight. I wouldn't say I didn't. It was a little thirty cent flashlight, about five or six inches long.''

This incident evinces a warlike disposition in her attitude toward her husband. He was no pacifist either, but his conduct on the occasion in question did not justify a resort to arms on her part.

We have quoted sufficient from the testimony to show that the plaintiff is not entitled to a decree. What of the defendant? We are satisfied that much of the discord in this home was caused by the defendant coming in at late hours intoxicated. The plaintiff so charges and the charge is supported by her testimony and that of her daughter. He denies it, and on the hearing called witnesses from among his neighbors and friends to disprove it. One of these, John B. Chappell, testified:

''During the time that I have known him I have never seen him under the influence of liquor to such an extent that he did not know what he was doing or was unable to take care of his business. * * * I never saw a man drunk to the extent that he was unable to take care of his business. I have seen Bill Cook take a drink. As to his taking lots of them, it all depends on what you consider lots. Everybody hasn't the same capacity. I have been out on two parties that I know of with Mr. Cook. No, they weren't good ones. I didn't have plenty to drink; I didn't have enough to drink. Bill Cook didn't have all he could drink. * * * I have played cards with Mr. Cook at the Masonic club probably about 50 times, sometimes until 1 or 1: 30 in the morning.''

Mr. Cain, the defendant's business partner, testified:

''I have never seen Mr. Cook so drunk that he was unable to take care of his work, except possibly once

in 1917. Not during the years 1924 and 1925. I was with him on that occasion and got pretty near drunk myself."

To the same effect is the testimony of the other witnesses. It differs only in degree from that of the plaintiff and her daughter.

Another subject of discord in the family was the defendant's visits to Hurley, Wisconsin. They all say that Hurley is a city notorious for vice. It is claimed that the defendant's visits there were in "the nature of slumming parties." We very much doubt it, but, assuming that they were, his wife had a right to insist that he refrain from making such visits. They gave her some ground for believing that he was consorting with lewd women; and it was quite natural that she should make a vigorous protest. For whatever domestic trouble arose over his conduct in this respect, the defendant was wholly to blame.

It is not necessary to comment further on the troubles which arose to mar the marital happiness of these parties. Both have contributed to the cause of estrangement that now exists. Neither is entitled to relief in a court of equity. *Legatski* v. *Legatski,* 230 Mich. 186, and cases cited.

The decree of the circuit court is reversed. The bill and cross-bill will be dismissed. The plaintiff will have costs.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.