## VARDON v. VARDON.

DIVORCE—EXTREME CRUELTY—DIVORCE PROPERLY DENIED WHERE BOTH AT FAULT.

Husband's bill and wife's cross-bill for divorce, on ground of extreme cruelty, were properly dismissed, where record shows that neither is in court with clean hands, but on contrary each is much at fault, and each is nearly equally responsible for their domestic difficulties.

POTTER, J., dissenting.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted June 13, 1933. (Docket No. 55, Calendar No. 37,254.) Decided March 6, 1934.

Bill for divorce by Colin C. Vardon against Elieva Mary Vardon. Cross-bill for separate maintenance by defendant against plaintiff. Bill and cross-bill dismissed. Both parties appeal. Affirmed.

*Miller, Baldwin & Boos,* for plaintiff.

*Emil W. Colombo,* for defendant.

NORTH, J. In this divorce case plaintiff in his bill of complaint charges defendant with extreme cruelty and asks a decree of absolute divorce. The defendant in her answer denies the material allegations made against her by plaintiff, and in a cross-bill charges plaintiff with extreme cruelty in consequence of which she seeks a decree for separate maintenance. By answer plaintiff denies the material allegations of the cross-bill. Testimony was taken at length in open court and a decree entered dismissing both plaintiff's bill of complaint and defendant's cross-bill, denying relief to either. Both have appealed.

These parties were married in August, 1910. Shortly thereafter plaintiff graduated from a medical college, and, except for his absence in France at the time of the World War, has been practicing medicine and surgery in the State of Michigan. Since his return from France the parties have resided in Detroit, where plaintiff has been successful in his profession. Two sons have been born of this marriage, the older one being past his majority at the time of the hearing in the circuit court, and the younger one is now about 14 years of age. The separation occurred in January, 1931, at which time plaintiff left the home, and the bill of complaint was filed in July following. In his bill of complaint as amended plaintiff charges that defendant is of a jealous, fault-finding, and censorious disposition; that without provocation she has nagged, harassed, and found fault with plaintiff, and that defendant's conduct in this regard became worse during the latter portion of

their cohabitation; that she has deliberately provoked quarrels, and thereby alienated and attempted to alienate the friendship of intimate friends and professional associates of plaintiff; that she has untruthfully stated that certain of plaintiff's patients were afflicted with venereal diseases; that at times in public and also in the presence of their friends defendant in a loud and angry manner upbraided plaintiff and made false charges against him; that without justification she has asserted to numerous people that she was required to work beyond her endurance in and about her household affairs; that plaintiff was mean and niggardly about money matters; notwithstanding he provided for the family a substantial home, furnished it amply, and during much of the time provided domestic help. Plaintiff also charges that defendant unduly interfered with his professional affairs, including the management of his office, and that since the filing of the original bill of complaint she has falsely charged him with improper relations with a married lady employed by plaintiff as an office assistant. There are many other details of alleged cruelty in plaintiff's pleading, including the charge that defendant was overly harsh and domineering in her manner of disciplining the two sons.

Defendant's cross-bill charges plaintiff is extremely haughty, arrogant, and labors under a superiority complex, all of which has caused defendant much humiliation and embarrassment; that for many years he has been cold and unsociable, not only to defendant, but to their acquaintances; that he has been fault-finding with defendant, has continually complained of household expenses; that plaintiff has been penurious, and has insisted upon exclusive charge of all financial matters having to do with

the home, and forced an accounting to him for all moneys expended by defendant; that plaintiff has accumulated substantial sums of money and made investments which he has kept a secret from defendant, and now has the same in his possession, such conduct being a scheme on the part of the plaintiff to cheat and defraud defendant; that plaintiff is of an extremely jealous disposition, and forbade defendant indulging in such social pleasures as dancing, etc.; and defendant further charges that plaintiff has imposed upon defendant by bringing undesirable patients to reside in their home. Defendant also claims that plaintiff used profane language in the home and towards her, and frequently said to her that, if she was dissatisfied, she could get out.

A large number of witnesses testified, and the record discloses blunt conflict in the testimony of the parties themselves as well as in the testimony of witnesses produced by the respective parties. Each of the parties produced some testimony tending to sustain practically every charge made against the other party, with the exception of defendant's charge that plaintiff was unduly intimate with his office assistant. In making disposition of the case, the trial court found that while there was some testimony tending to establish the material charges of the respective parties, still as a whole the proof was not sufficient to satisfy him that either party was entitled to relief. The record before us discloses that the proper result was reached; but we are of the opinion that the more patent reason for so holding is that this record conclusively establishes that each of these parties has persistently assumed a wrong attitude incident to their marital relations. Neither is in court with clean hands, but on the con-

trary each is much at fault, and each is nearly equally responsible with the other for their domestic difficulties. We find so many of the charges made by each against the other established by the testimony that no other result would be justified in equity than to deny relief to either.

"A wife's bill and husband's cross-bill for divorce on the ground of extreme cruelty should both have been dismissed where the record on appeal shows that they were both guilty of extreme cruelty, and it is immaterial that one may have been more in fault than the other; there being no law of comparative cruelty in divorce cases." *Legatski* v. *Legatski* (syllabus), 230 Mich. 186.

See, also, *Cook* v. *Cook,* 245 Mich. 339.

The decree entered in the circuit court is affirmed, without costs to either party.

NELSON SHARPE, C. J., and WIEST and BUTZEL, JJ., concurred with NORTH, J.

POTTER, J. (*dissenting*). Plaintiff seeks divorce on the ground of extreme cruelty; defendant, separate maintenance on the ground of extreme cruelty. From a decree dismissing both the bill of complaint and the answer in the nature of a cross-bill, both parties appeal.

Plaintiff, a practicing physician and surgeon in Highland Park, was raised on a farm. After graduating from high school he studied medicine at the University of Michigan and in Detroit. The parties were married in Windsor, Ontario, in 1910. Prior to her marriage defendant had worked in an office, earned and saved some money. After plaintiff's graduation, the parties moved to East Jordan where plaintiff began general practice with a fair

degree of success. He served overseas with the American Expeditionary Force as a physician and surgeon, thereby acquiring considerable practical experience. After the war he moved to Highland Park with his family and became attached to the surgical force of the local hospital. His charges against defendant are that she humiliated and annoyed him in an unreasonable manner; circulated false, scandalous and defamatory stories about him; falsely accused him of adultery and humiliated and disgraced him, thereby injuring his professional standing and endangering his means of livelihood.

Defendant charges him with extreme and repeated cruelty. The trial court apparently unsuccessfully tried to effect a reconciliation between the parties, and indicates an affirmative decree of some kind would have been granted had a property settlement been effected.

The settlement of the property rights of the parties is ancillary though important. The crucial questions are whether the plaintiff is entitled to a decree of divorce and if not, whether defendant is entitled to a decree of separate maintenance. Defendant indicates she is willing to forget plaintiff's extreme cruelty and effect a reconciliation conditioned however upon his change of attitude toward her. The record shows plaintiff as a careful, economical and methodical young physician and surgeon of good habits, ambitious to obtain a practice, recognition by his associates and standing in his profession; he has worked, earned a substantial income, traveled with his wife and family, lived in a good house, in a good residential section of the community; built, furnished and maintained a summer home in Kingsville, Ontario; maintained an office, driven an automobile, furnished his wife one, sent

his children to school, dressed in a substantial way, furnished his wife considerable sums of money and ample credit until his household expenses were running, during the last years the parties lived together, approximately $10,000 a year for defendant, the household expenses and those of two boys. Defendant complains he was niggardly with her, he did not permit her to acquire half a dozen party dresses; though she had 64 charge accounts; he complained that she had too many bills and at one time criticized the fact she had 200 telephone calls in a month above the number allowed by the telephone company in its base rate. She played golf and entertained the bridge club. She says, ''I would go down to the golf club if I had to crawl to get my children there.'' She wanted a better summer home at Kingsville and a better home in which to live. Plaintiff acquired a substantial dwelling house in which he says he had expended about $20,000; had substantial furniture and oriental or Chinese rugs in all the rooms except the kitchen. The house was undoubtedly furnished better than either party had ever had before. In testifying, defendant accused her husband of causing newspaper articles to be published in the Detroit papers in relation to the divorce proceedings, but she was the only person interviewed in connection therewith. She charges plaintiff sought to prejudice the older son against her but there is no substantial proof of this except her hearsay statements. Plaintiff claims defendant frequently made scenes to his humiliation by ''bawling him out'' in an angry manner in the presence of his associates and guests, and particularly he calls attention to the difficulties which defendant had with the family of Dr. Piper, though defendant boasts she has more neighbors than Dr. Piper's people. He

claims she "bawled him out" in the presence of
Mr. Bowles, who was a neighbor. Both these cir-
cumstances are corroborated and practically admit-
ted by defendant. He alleges she criticized the fact
her sister lived in the home, and on various trips
with tourists to Duluth, Montreal, Chicago, Yellow
Stone Park and other places she conducted herself
in such a manner as to attract the attention of other
people, and humiliate him. Particularly he com-
plains that at the time the younger son was in the
hospital, operated on for appendicitis she told the
hospital nurses the hospital doctors ran around with
the nurses, objected to the night nurse employed to
take care of the son, found fault with the hospital
food, and claimed plaintiff was in love with one of
the nurses. After the separation of the parties,
defendant learned from her butter and egg man
plaintiff's office assistant, who was a married woman
with a child, had filed a bill for divorce. In reliance
on this back-door gossip she immediately began to
charge plaintiff with some connection with his office
girl's divorce proceedings; told others her husband
was in love with the office girl; charged he was the
father of the office girl's child; that he had broken
up her family, and made unreasonable and improb-
able statements about her husband to her associates,
particularly about his passionate disposition and
sexual proclivities until even the trial court was
shocked with her readiness to converse on this sub-
ject with others. There is nothing out of the ordi-
nary in the conduct of the plaintiff. He sought to
get ahead in his profession. At one time he was
earning around $19,000 a year. Since his separation
from defendant his practice has fallen off several
thousand dollars a year, possibly due to the de-
pression and not to the defendant's conduct. He
desired to earn money. She desired to spend it. He

was satisfied to get along moderately. She desired to cut a social swath. Her statements about some of her neighbors, her quarrels, her public exhibition of temper to which others without interest testify might possibly have been condoned, but we are satisfied from defendant's statements which she admits making, her manner of testifying and from the testimony of others apparently unbiased, the defendant was guilty without cause or just provocation of circulating these false stories about the doctor and his alleged intimacy with the office girl, thus tending to disgrace him and to endanger his means of livelihood, and that as found by the trial court, her repeated accusations of adultery are wholly unsupported by the testimony, so much so that the trial court refused to hear the testimony of the witnesses produced by the plaintiff, namely the office girl and her husband, and that by reason thereof the decree of the trial court should be reversed and a decree of divorce for plaintiff entered.

By supplemental brief of appellant it appears he has paid defendant $6,066.34 temporary alimony in addition to small sums paid his sons and counsel fee of $200 to defendant's counsel, making in all $6,447.34. Ordinarily, one against whom a decree of divorce is rendered forfeits the right to alimony by reason of their own misconduct, but in view of the long time the parties hereto lived together and other circumstances, an award of alimony and a division of the property of the parties should be made. A decree awarding an absolute divorce to plaintiff may be entered. Defendant is awarded the Packard automobile which she drives, the household furniture and furnishings in the Monterey avenue home, the summer home at Kingsville, Ontario, and $30 a month for the care and support of the youngest son of the parties until he shall reach the age of 21, if he continues

to live and reside with defendant. Plaintiff shall make, execute and tender all proper conveyance to assure defendant's title to the property awarded her. Plaintiff shall also pay to defendant as and for permanent alimony and in consideration of her release of any and all claims against plaintiff or his property, and for her interest in property held by the parties as joint tenants or tenants by the entirety, and in full for alimony, dower, homestead rights, interests in or title to real estate, support and maintenance, the sum of $10,000, the same to be paid at the rate of at least $125 a month, with the right to pay sums in excess of that amount and all, in any event, to be paid within the period of five years from the date of decree, without interest.

Plaintiff is to be awarded all other real estate and personal property now owned or held by him or by the parties as joint tenants or tenants by the entirety, free from any and all claims upon the part of defendant. Defendant is to make, execute and deliver all proper conveyances necessary and requisite to release her rights and interests in such property, and in default thereof the decree may stand as and for a conveyance of such title and interest. Plaintiff to take such real estate subject to the outstanding taxes and encumbrances thereon. Defendant to pay all unpaid bills contracted by her. If plaintiff is compelled to pay any of such bills, the amount thereof may be deducted from the amount above awarded. The decree herein to be without costs to either party except that defendant is awarded an additional counsel fee of $100 to be paid by plaintiff.

FEAD, J., did not sit. McDONALD and CLARK, JJ., took no part in this decision.