BERGHAGE *v.* BERGHAGE.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.

In husband's suit for divorce wherein wife filed a cross bill, both seeking relief from alleged extreme cruelty, evidence disentitled either party to a decree of divorce where it showed that plaintiff acquiesced in and assisted defendant in preparing for trip to distant State where she was entertained by a man with whom she had "kept company" prior to marriage with plaintiff and plaintiff based his case on letters received

from defendant while being so entertained and her alleged indifference toward their three children prior to such visit and evidence that defendant was indifferent to the welfare of her children or the opinions of people who might learn of her visit to another man in the absence of his family.

2. SAME—RECORD—SUPPORT OF CHILDREN—JURISDICTION—QUESTIONS REVIEWABLE.

If record in suit for divorce does not justify awarding custody of three children and $35 a week to wife and the children until the youngest was 18 years of age or until the further order of the court, it would be unnecessary to determine whether or not court had jurisdiction to do so where neither party was found entitled to a decree of divorce (3 Comp. Laws 1929, § 12794).

3. SAME—CUSTODY OF CHILDREN—WIFE'S INDIFFERENCE TO WELFARE OF CHILDREN—REPUTATION—COSTS.

Under record in suit for divorce, which shows that neither party was entitled to a decree of divorce and that the three children were being properly cared for, treated kindly, and surrounded with proper home environment in the homes of plaintiff husband's mother and sister, it was error to award their custody to defendant wife and the payment of $35 weekly to her until the youngest child should be 18 years of age or until the further order of the court, where the conduct of the wife under the circumstances shown indicates indifference to the welfare of the children and her own reputation; no costs being allowed upon entry of decree in Supreme Court dismissing bill and cross bill.

Appeal from Kent; Souter (Dale), J. Submitted January 10, 1946. (Docket No. 68, Calendar No. 43,189.) Decided March 4, 1946.

Bill by William Berghage against Emma C. Berghage for divorce for extreme cruelty. Cross bill by defendant against plaintiff for divorce for extreme cruelty. Decree denying divorce to either party but giving custody of children to defendant and making provision for support. Both parties appeal. Reversed and bill and cross bill dismissed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*Fred P. Geib* (*Clem H. Block,* of counsel), for defendant.

CARR, J.  Plaintiff herein filed his bill of complaint February 6, 1945, seeking a divorce from defendant on the ground of extreme and repeated cruelty.  Defendant answered, denying the charges against her and filed a cross bill seeking a divorce from plaintiff, likewise alleging extreme and repeated cruelty. Plaintiff, by answer, denied the material allegations of the cross bill.  The case was submitted to the trial court on the pleadings and on the proofs of the parties.  Thereupon the court entered a decree denying a divorce to either party, said decree reciting that plaintiff "is not entitled to a decree of divorce by reason of connivance in bringing about the matters and things charged by him against defendant," and further reciting that cross-plaintiff had failed to sustain the charge of extreme and repeated cruelty alleged by her.  The decree awarded to defendant and cross-plaintiff the custody of the three children of the parties and required the plaintiff to pay $35 a week "for the use, benefit and support of defendant and to make a home available to defendant, and for the support and maintenance of said children and such payment shall continue until each child attains the full age of 18 years or until the further order of the court."  Defendant and cross-plaintiff was also given the use of the household furniture; and plaintiff was required to pay an attorney fee to defendant's attorney in the sum of $150. From the decree entered both parties have appealed.

It is the claim of plaintiff that under the evidence he is entitled to a decree of divorce and that this

court, hearing the matter *de novo* on the record, should grant him that relief; and he further claims that the decree entered was in effect one for separate maintenance, that the record does not justify the relief granted to defendant and cross-plaintiff and that the trial court, having found that neither party was entitled to a decree of divorce, was without jurisdiction to make a decree with reference to the custody of the children and the support of defendant and the children.

On behalf of defendant and cross-plaintiff it is insisted that the proofs entitle her to a decree of absolute divorce on the grounds alleged in her cross bill; that under the inherent powers of a court of equity and also by virtue of 3 Comp. Laws 1929, § 12852 (Stat. Ann. § 25.311), the trial court had power, notwithstanding the denial of a divorce to either party to the case, to make provision for the custody and support of the children and that, if defendant and cross-plaintiff is found not entitled to a divorce, the decree as entered should be affirmed.

The record discloses that the parties were married in August, 1937. Four children were born to the marriage, the youngest dying in infancy. No difficulties of a serious nature arose until shortly prior to institution of the divorce case. In September or October, 1944, a man with whom defendant had been friendly and with whom she "kept company" prior to her marriage to plaintiff, wrote to defendant from California, inviting her to visit him in that State and offering to pay her expenses. The parties are not wholly in accord as to whether this letter was read in its entirety by defendant to plaintiff. However, the latter was advised of the situation and claims that he sought to dissuade defendant from making the trip. Regardless of his feelings in the matter it clearly appears from the record that he

finally acquiesced; that he assisted in placing the children in proper homes where they would be cared for while defendant was gone; that he gave defendant money, approximately $90, for such use as she might wish to make of it; that he cashed a check in the sum of $200, sent to defendant by the party in California, to whom reference is above made; that he indorsed this check and turned the proceeds over to defendant; that he went to the railroad station with defendant for the purpose of obtaining reservations for her trip; and that when defendant left, on December 26, 1944, for California, there apparently was no ill feeling or estrangement between them, it being agreed that defendant would return in approximately six weeks. It is also in evidence that in conversation with defendant's mother on Thanksgiving day, 1944, plaintiff said in answer to a question asked him by the mother: "Mother, don't you worry. Yes, I told her she could go." The mother further testified that plaintiff laughed and said, "I shouldn't worry."

For some time after defendant went to California, she and plaintiff exchanged letters, defendant advising plaintiff as to the good times she was having with the man who was paying her expenses, and plaintiff replying in such manner as to indicate no disapproval on his part. In one letter, dated January 12, 1945, plaintiff told defendant to "Have fun." In another letter, dated January 13, 1945, plaintiff indicated that he had been advised by defendant that she was using an assumed name in California, but said letter expressed no disapproval in that regard. Plaintiff made the further rather significant comment in this letter, apparently referring to the wife of the man who was entertaining defendant, "I'll bet somebody else is going to blow their topper when she gets back to Delano. How can you keep under

cover in such a small town—too bad, so sad, & all that sort of rot." Without discussing further this phase of the case we think the evidence fully justifies the conclusion that plaintiff acquiesced in defendant's trip to California, and understood fully that she was to be entertained, and her expenses paid, by her friend in that State.

Plaintiff does not claim any personal knowledge as to what occurred in California. Rather, he relies entirely on the letters written to him by defendant. It may be said that these letters indicate she was being entertained in the manner that the parties should have anticipated prior to the making of the trip. It is scarcely plausible that defendant would have written to plaintiff as she did if she had reason to believe that he would be shocked or angered by her recitals of occurrences. It may be noted in this connection that plaintiff, testifying in his own behalf, claimed that he started the divorce action on the basis of these letters, and also because he had come to the conclusion that defendant had not, prior to her leaving for California, cared for the children in a proper manner. If there was failure on defendant's part, with reference to such care, no explanation is offered as to plaintiff's failure to sooner discover that fact.

Notwithstanding the knowledge and acquiescence on the part of plaintiff with reference to the acts of extreme and repeated cruelty on the basis of which he seeks a decree of divorce, it is apparent from the record that the conduct of defendant and cross-plaintiff was wholly without justification or excuse. Accepting money from this man in California to pay her expenses in visiting him there in the absence of his wife and family, and associating with him in the manner indicated by her letters to plaintiff, suggest an indifference on her part to ordinary moral and

ethical standards, and, likewise, an indifference to the opinions of others. It is in evidence that relatives and friends, deeply concerned in her welfare, sought to dissuade her from making the trip to California, but without avail. The following testimony given by a witness who had been a friend of defendant for some time is significant:

"When she called me up and told me that one of her former boy friends had agreed to pay her way to California and back and I asked her if she intended going and she said 'yes,' and I asked her if she thought she was doing right by the children and she said when her children grew up they would do as they pleased. She didn't care to interfere in what they did and she was going to live her own life. That is what she told me. And she said when her children grew up she wouldn't interfere, that they could live their own lives and she was living hers. I told her this other man was married and maybe even if she didn't care about that man, she might break up his home and she said, 'Well, if that woman can't hold her husband that's her tough luck.' 'Well, disregard his wife then, even if she lost her husband, he has three children and they would be out of a home,' and she said, 'Well, that is his worry.'"

This testimony indicates an indifference on the part of the defendant to the welfare of her children as well as a lack of concern with reference to the opinions of people who might learn of her conduct. It is scarcely conceivable that a mother, if deeply concerned in the welfare of her children, would express herself as indicated by the testimony above quoted, or would indulge in the course of conduct that this record clearly establishes on the part of defendant.

The trial court was right in holding that neither party, under the proofs submitted, was entitled to a decree of divorce. *Herrick* v. *Herrick,* 31 Mich. 298;

*Cook* v. *Cook,* 245 Mich. 339; *Herp* v. *Herp,* 254 Mich. 33; *Vardon* v. *Vardon,* 266 Mich. 341; *Hilton* v. *Hilton,* 280 Mich. 102.

This brings us to the consideration of the provisions of the decree of the trial court with reference to the custody of the children and the support of the children and of the defendant. As before stated, it is the claim of plaintiff that such provisions are not justified by the record and, further, that the court was without jurisdiction, having denied a divorce to each of the parties, to enter such a decree. If plaintiff is correct in the first contention it is obviously unnecessary to determine whether, under such circumstances as would render proper and expedient the exercise of such power, the court in a divorce suit, while denying a decree of divorce, might take jurisdiction for the purpose of providing for the care and maintenance of minor children.

In contending that the facts as disclosed by the record in the case at bar do not justify the decree, assuming jurisdiction in the premises, it is argued that the trial court, in effect, undertook to grant defendant separate maintenance. It is suggested that had defendant filed her petition under Comp. Laws 1929, § 12794 (Stat. Ann. § 25.211), relief must necessarily have been denied, under the specific provisions of the statute, for the reasons as stated by the trial court, that prompted the denial of a decree of divorce.

It is further contended that, so far as defendant is concerned, her conduct, as disclosed by the proofs in the case, precludes the granting of any equitable relief to her. There is, we think, much force in this claim. The conduct of defendant, above discussed, was not of such character as to support a determination that she is entitled, at the present time, to the custody and control of these children. Neither does

it appear that, under the present circumstances, the welfare of the children would best be subserved by taking them from the homes of the mother and sister of plaintiff in which they are being supported and maintained, and turning them over to defendant. It is not disputed that they are being properly cared for, treated kindly, and surrounded with proper home environment. Under such circumstances the court should not interfere with the existing situation. Consideration of their parental duties and natural affection for their children may bring about a reconciliation between the plaintiff and defendant. No obstacle should be placed in the way of such reconciliation.

For the reasons stated, the decree of the trial court is reversed and a decree will enter here, dismissing the bill and the cross bill. No costs are allowed.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.