## GODFREY v. GODFREY.

1. APPEAL AND ERROR—CHANCERY CASE—DE NOVO REVIEW BY SU-
   PREME COURT—DISAGREEMENT WITH FINDING OF FACTS.

   The Supreme Court will reverse the trial court on the *de novo* re-
   view of a chancery case, where in disagreement with the
   finding of material facts of the trial court.

2. DIVORCE—EQUAL BLAME FOR DIFFICULTIES—CLEAN HANDS.

   A divorce will not be granted, where the parties are equally to
   blame for their difficulties as the plaintiff does not come into
   court with clean hands.

3. SAME—MUTUAL WRANGLINGS—GROUNDS.

   A divorce will not be granted merely because the parties, from
   unruly tempers or mutual wranglings live unhappily together
   as they are required to submit to the ordinary consequences of
   human infirmities, and of unwise selections, it being necessary
   that the ground for a legal separation be very serious and
   such as amounts to extreme cruelty, entirely subverting the
   family relations.

4. MARRIAGE—NATURE OF STATUS OF HUSBAND AND WIFE.

   A husband and wife are bound to exercise greater efforts for
   removing misapprehension, allaying quarrels, smoothing the
   road to concord, and effecting reconciliation, than are people
   in other relations of life, the marriage status being not merely
   contractual so as to entitle each of the parties to demand
   the strict letter of the bond but a status wherein the law
   operates upon the weakness as well as the strength of human
   nature, and it will not be dissolved except for grave and sub-
   stantial causes.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 895 *et seq.*
[2, 5] 17 Am Jur, Divorce and Separation § 233.
[3] 17 Am Jur, Divorce and Separation § 48 *et seq.*
[4] 17 Am Jur, Divorce and Separation § 25 *et seq.*

5. DIVORCE—SUBVERSIVE CONDUCT BY PLAINTIFF.
    A decree of divorce may not properly be granted to one who
    has deliberately engaged in a course of conduct subversive of
    the marital relation and reprehensible from the public stand-
    point.

6. SAME—RECONCILIATION.
    The improbability of a reconciliation does not, alone, furnish
    a reason for granting a decree of divorce.

7. SAME—EXTREME CRUELTY—EVIDENCE.
    Plaintiff husband *held*, to have failed to substantiate his
    ground for divorce for defendant wife's alleged extreme cruelty.

Appeal from the Superior Court of Grand Rapids;
Taylor (Thaddeus B.), J. Submitted October 2,
1956. (Docket No. 13, Calendar No. 46,898.) Decided
December 6, 1956.

Bill by Joe Godfrey against Elsie Godfrey for
divorce because of extreme cruelty. Decree for
plaintiff. Defendant appeals. Reversed and bill
ordered dismissed.

*Julius J. Herscher,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal (John H.
Vander Wal,* of counsel), for defendant.

SHARPE, J. Defendant Elsie Godfrey appeals from
a decree granting a divorce to plaintiff Joe Godfrey.
Defendant urges that the plaintiff has not established
grounds for divorce and that there is no reason for
the granting of a divorce to plaintiff or granting
plaintiff any relief whatsoever. She asks this Court
to dismiss plaintiff's bill of complaint.

These parties were married September 15, 1935, at
New Orleans, Louisiana, and cohabited for approxi-
mately 19 years. No children were born to this mar-
riage. Defendant has a daughter by a previous mar-
riage. These parties moved to Grand Rapids sev-

eral years ago, and in January, 1948, they bought a home on land contract.

Plaintiff's bill of complaint filed September 29, 1954, alleges:

"During the married life of the parties, the plaintiff has worked steadily and continuously. They purchased a home, which has been the residence of the parties, located at 127 Canton street, S.W., for the sum of $6,500, upon which there is a balance now due of approximately $2,300, with payments of $55 per month. In addition, the plaintiff spent the sum of $1,200 for a new furnace in this property; $479 for new insulating siding, and $150 for a hot water heater.

"When this property had been placed in good condition, and the plaintiff had done everything to it that defendant wanted, the defendant ceased to have any interest in the plaintiff. For the past 3 years, the defendant has refused to live with the plaintiff as husband and wife.

"Defendant would go away from the home of the parties, and stay away until 1:30 a.m. or 2 o'clock a.m., without telling the plaintiff where she was going, or, upon return, where she had been.

"Finally, on or about June 15, 1954, the defendant told the plaintiff to get out of the home of the parties.

"During the time that the parties lived together, the plaintiff paid all bills, and while the defendant was working and earning good wages as an employee of Blodgett hospital, she kept all of her money, and put it in the bank. In addition the defendant has income from the rental of at least 1 room or more, in the home of the parties."

In her answer defendant alleges that:

"This defendant further shows that the plaintiff voluntarily left the home of the parties in June of 1954, assumed no responsibility of the home, made no payments on the indebtednesses of the parties, and refused to live with this defendant. That thereafter

in August, while this defendant was working, the plaintiff came back into the home, made no explanation of his absence, offered to make no payments on any of the obligations of the parties, and at that time this defendant ordered. the plaintiff to leave. This defendant denies that she ordered plaintiff to leave on June 15th, but states that plaintiff voluntarily left the home at that time.

"Further answering said paragraph, this defendant denies that she has stayed away from the home until between 1:30 and 2 a.m."

From the testimony it appears that defendant is now employed at a hospital in Grand Rapids and has been employed most of her married life. It also appears that defendant's daughter, son-in-law, and 4 children lived with these parties during their married life. The daughter is now divorced and she and the children live with defendant and depend on defendant for their support. While the son-in-law lived in the home he contributed $25 a month toward the monthly payment on the home, but the testimony does not disclose how he otherwise contributed toward the support of his family.

Plaintiff testified that the money for the down payment of the home came from money he and defendant earned and saved; that defendant's attitude toward him changed after he had the house all fixed up; that defendant would visit friends in the evening and would not return home until 12:30 or 1 o'clock in the morning; that defendant's daughter prepared all his meals; that defendant refused to talk to plaintiff; that defendant contributed nothing from her income toward the home or bills; that defendant refused to sleep with him; that he supported defendant's daughter almost all her life; that the son-in-law contributed $25 a month toward payments on the home; that he "got tired" the way defendant was acting and left home in July, 1954; that he remained

away from home approximately a month and half and did not contribute anything to defendant's support; that in August he attempted to move back home but defendant refused to take him back.

Defendant testified that she invested $700 that had been saved for her daughter's education for the down payment on the home; that this money was sent to her by a brother in the army; that the same brother contributed $250 to the down payment on the home; that from September, 1948, to December, 1948, plaintiff was out of work and she and the son-in-law made the payments on the home and supported the family; that in February, 1954, plaintiff made a telephone call to a woman in Louisiana that he used to go with, and about that time they started having difficulty getting along; that plaintiff quit speaking to defendant in April, 1954, because she would not give him any of her unemployment compensation money; that in May, 1954, plaintiff asked defendant for $1,000 so he could return to Louisiana; that in May, 1954, plaintiff began to stay out nights—he would come home from work in the afternoon, take a bath and walk out the door and would not return until the following morning; that when he got his vacation check in June he left home and she did not know his whereabouts; that on various occasions defendant saw plaintiff in the company of other women; that plaintiff refused to go out with defendant socially; that defendant refused to let plaintiff return to the home because he didn't consult with her before moving back nor give her any reason for his actions; that she wanted plaintiff to come back, and that she didn't desire a divorce.

The trial court granted plaintiff a divorce and in an opinion stated:

"The above action was brought on for hearing on April 29, 1955, and it is apparent that the parties had

been separated since May, 1954. They were married in September, 1935, and therefore, had cohabited for approximately 19 years. It was found from the testimony submitted that the conduct of the defendant toward the plaintiff has been such as will warrant the granting to him of a decree of divorce as prayed. Her conduct was certainly incompatible to the maintaining of a harmonious relationship between the plaintiff and her, and it is unnecessary to repeat the details of their difficulties in this opinion.

"At the time of the hearing, the defendant's daughter and 4 children were also living with her. The parties have worked together over the years and made savings which they invested in a home. It was testified that the fair market value of the home was approximately $8,500, and there is presently an encumbrance due thereon of around $1,700. It is also apparent that the defendant does not want to live with the plaintiff as his wife, and on the other hand she insists that he is not entitled to anything so far as the property is concerned.

"The plaintiff on the other hand does not insist that the defendant should be deprived of the property, but does feel that he should have some reasonable portion thereof.

"The defendant should be permitted to retain the household furniture and should pay to the plaintiff a portion of the equity which exists. The decree will provide, therefore, that she pay to the plaintiff within 60 days the sum of $1,500 in full of his interest in the property. If she does not wish to do this, or is unable to do so, the court reserves the right to appoint a receiver to take possession and control of the property and sell it at the highest market price, and therefrom to pay to the plaintiff the sum of $1,500 and the balance of the sale price to be paid to the defendant."

In reviewing this case *de novo* we find ourselves in disagreement with the finding of facts of the trial court. After a thorough study of this record we can

only reach the conclusion that each of the parties involved in this case is equally to blame for their difficulties and therefore they are not entitled to a divorce. In *Kuhfal* v. *Kuhfal,* 318 Mich 105, 108, 109, we said:

"The parties are each to blame. Possibly when they realize that they are not entitled to a divorce, they will effect a reconciliation, exercise mutual forbearance, and readjust their lives and conduct along happier lines. In any event, where parties are both to blame and do not come into court with clean hands, a divorce will not be granted. *Hambley* v. *Hambley,* 230 Mich 534; *Cook* v. *Cook,* 245 Mich 339; *Terrell* v. *Terrell,* 317 Mich 49."

In *Kanka* v. *Kanka,* 318 Mich 109, 112, we quoted with approval the following:

" 'The law does not permit courts to sever the marriage bond, and to break up households, merely because parties, from unruly tempers or mutual wranglings, live unhappily together. It requires them to submit to the ordinary consequences of human infirmities, and of unwise selections, and the misconduct which will form a good ground for a legal separation must be very serious, and such as amounts to extreme cruelty, entirely subverting the family relations by rendering the association intolerable.' " (Quoted in *Brewer* v. *Brewer,* 295 Mich 370, 373, from *Cooper* v. *Cooper,* 17 Mich 205, 210 [97 Am Dec 182].)

We quoted with approval from 9 RCL, Divorce and Separation, § 116, p 337 in *Bolthuis* v. *Bolthuis,* 233 Mich 584, 586, 587, as follows:

" 'As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation, than are people in other relations of life. The marriage status is not merely contractual so as to entitle each

of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes.' "

In *McGorkey* v. *McGorkey,* 336 Mich 698, 700, 701, we said:

"This Court has repeatedly held that a decree of divorce may not properly be granted to one who has deliberately engaged in a course of conduct subversive of the marital relation and reprehensible from the public standpoint. *Czyzewski* v. *Czyzewski,* 304 Mich 402; *Lieberwitz* v. *Lieberwitz,* 314 Mich 686; *Kuhfal* v. *Kuhfal,* 318 Mich 105; *Kanka* v. *Kanka,* 318 Mich 109; *Kauk* v. *Kauk,* 322 Mich 291. That a reconciliation is improbable furnishes no reason for granting a decree in the face of the uncontradicted testimony in the record. *Bolthuis* v. *Bolthuis,* 233 Mich 584. Under the evidence in the case plaintiff was not entitled to a divorce."

In our opinion grounds for divorce have not been substantiated. The decree of the trial court should be reversed and plaintiff's bill of complaint dismissed.

DETHMERS, C. J., and SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.

BOYLES, J., took no part in the decision of this case.