EDYTHE B. BURNS, Plaintiff and Appellant *v.* ROBERT
H. BURNS, Defendant and Respondent.

No. 10622.

Submitted November 4, 1963. Decided February 20, 1964.
Petition for rehearing granted July 2, 1964. Rehearing had on
September 17, 1964. Decided February 2, 1965.

400 P.2d 642.

(1)

2

William G. Mouat (argued), Billings, for appellant.

Morrow & Nash, James H. Morrow, Jr. (argued), Bozeman, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

On rehearing. The opinion heretofore rendered on February 20, 1964, is withdrawn and the following is substituted therefor.

This is an appeal by plaintiff, Edythe B. Burns, hereinafter referred to as appellant, from a judgment of divorce entered

by the district court of the sixth judicial district of the State of Montana sitting without a jury.

Appellant originally commenced an action on June 29, 1961, for separate maintenance from Robert H. Burns, appellant's husband and respondent here. Respondent filed his answer and cross-claimed for a divorce cn March 29, 1962. Appellant was allowed to amend her complaint on May 29, 1962, in which she sought, among other things, an absolute divorce from respondent. On July 24, 1962, appellant filed an answer to respondent's cross-claim. The matter was tried on September 27-29, 1962; the court's findings of facts and conclusions of law being made on February 4, 1963, and to which neither party took exception. Judgment thereon consisted of a decree of divorce granted each party, appellant being awarded custody of the minor child, a daughter, and the sum of $250 monthly alimony. Each party was ordered to pay his own attorney fees and costs. Appellant instituted this appeal from that judgment with specifications of error covering all of that judgment save the award of custody of the daughter of the marriage.

It should be noted at this point, that the court in its decree made no provision for the support of either the minor daughter, whose custody had been awarded the appellant, nor the elder daughter who, at the time of judgment, had attained her majority. The record reveals that both daughters had been amply provided for. As guardian for the daughters the appellant had received a total of approximately $10,761 from the respondent for their maintenance, support and education. In addition, the record discloses that respondent had executed promissory notes in the aggregate of $61,000, payable to his daughters, requiring interest payments of 4 percent annually and whose principal was due in thirteen years.

By virtue of the fact that this case presented to this court a question of first impression we granted rehearing to enable counsel to brief and argue the issue of whether the lower court

4

erred in granting a divorce to both parties in view of the Montana statutes establishing the defense of recrimination in actions for divorce.

R.C.M. 1947, § 21-118, provides, in part, that: "Divorces must be denied upon showing: * * * Recrimination."

Section 21-128 provides that: "Recrimination is a showing by the defendant of any cause of divorce against the plaintiff in bar of the plaintiff's cause of divorce."

A discussion of the doctrine of recrimination, its origin, nature, application by the ecclesiastical courts of England, and subsequent adoption by the common law and the courts of this country would render this decision far too prolix. Excellent treatment has been afforded the subject by the leading text writers (1 Nelson on Divorce and Annulment (2d Ed.) § 10.01 et seq.; 17 Am.Jur., Divorce and Separation, § 267 et seq.; 27A C.J.S. Divorce § 67 et seq.)

Although there does exist a considerable body of authority which currently imparts vitality to the doctrine in a great many jurisdictions (see, e.g., Davey v. Davey, 202 Md. 428, 96 A.2d 606; Godfrey v. Godfrey, 347 Mich. 130, 79 N.W.2d 476; Kucera v. Kucera (N.D.), 117 N.W.2d 810; Paulsen v. Paulsen, 243 Iowa 51, 50 N.W.2d 567) there are, nonetheless, courts of our sister states, having statutes identical to our own, which recognize the socially stultifying effects of the doctrine and have sought to ameliorate its effect by applying the doctrine of comparative rectitude (Hendricks v. Hendricks, 123 Utah 178, 257 P.2d 366; Howay v. Howay, 74 Idaho 492, 264 P.2d 691) or by dispensing with the rule entirely and granting divorces to both parties (De Burgh v. De Burgh, 39 Cal.2d 858, 250 P.2d 598).

In the De Burgh case, supra, both parties sought a divorce and the trial court, believing that the transgressions of each party necessarily precluded the granting of a divorce to either, denied the relief prayed for. On appeal, the majority declared that divorce could be granted in such cases and that the lower

court could, in its discretion, grant a decree to either one or both.

In arriving at this decision the California court was called upon to construe section 122 Cal.Civ.Code, which provides that: "Recrimination is a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce." This statute is identical to R.C.M.1947, § 21-128.

The court stated that "* * * the language of section 122 of the Civil Code indicates that the trial court may have abused its discretion in disregarding the requirement therein that the cause of divorce of which one party is found guilty must be 'in bar' of that party's ground of divorce against the other party". (250 P.2d at 600.)

The California court went on to say that the language of section 122 is "ill-adapted" to support the proposition that "any cause of divorce constitutes a recriminatory defense"; that if such had been the intent of the legislature, then it could have provided that "divorces must be denied upon * * * a showing by the defendant of any cause of divorce against the plaintiff" without including the phrase "in bar to the plaintiff's cause of divorce". Continuing, the court stated that the subject code provision reflected two basic changes in the California law that had existed up until the time of its enactment: The code required that the defendant prove a cause of divorce against the plaintiff, and rejection, by the legislature, of the strict rule of recrimination. The latter change, the court goes on, is reflective of the legislative recognition of the fact that the "public interest has formed the basis of a recognized exception to the equitable doctrine of unclean hands, with which the defense of recrimination has become increasingly identified since the enactment of the Code. It is clear that the Legislature, in relying upon judicial principles of general application, intended that in divorce litigation the fault of the plaintiff should have no more significance than elsewhere in

the law. Apparently with this purpose in mind it worded the statute to require that a cause of divorce shown by defendant must be 'in bar' of the plaintiff's cause of divorce. It would have defeated its own purpose had it closed the avenues to divorce when the legitimate objects of matrimony have been destroyed. The perpetuation of an unwholesome relationship would be a mockery of marriage". (250 P.2d at 602, 603.)

On remand for a new trial the court in the De Burgh case did not set out any exact formula to be utilized by the lower court in determining whether the legitimate objects of the marriage had been destroyed. It did suggest, however, the following criteria which should govern the court's decision in the exercise of its discretion: The prospect of reconciliation; the effect of the marital conflict upon the parties; the effect of the marital conflict upon third parties; and the comparative guilt of the parties.

Thereafter, in the case of Phillips v. Phillips, 41 Cal.2d 869, 264 P.2d 926 (1953), the trial court, acting before the De Burgh decision came down, found that each spouse had been guilty of extreme cruelty and believing that it had no other choice, denied the relief for which both had prayed. In reversing the lower court, the Supreme Court held that recrimination did not apply and that "[i]t is clear from the evidence and the findings that the legitimate objects of the marriage have been destroyed. No public policy would be served by denying a divorce because each party was guilty of extreme cruelty toward the other. It is a degradation of marriage and a frustration of its purposes to use it as a means of punishing the parties to the divorce action. In our opinion, the trial judge should not have denied the parties a divorce on the ground that recrimination had been shown. The judgment must therefore be reversed. On retrial, the court may determine whether one or both parties shall receive the divorce." (264 P.2d at 931.)

The succeeding cases not only establish the validity of the

dual divorce in California, but also establish that the trial court, if it finds that the legitimate objects of marriage have been destroyed, has no discretion to deny relief (Mueller v. Mueller, 44 Cal.2d 527, 282 P.2d 869 (1955); Cohen v. Cohen, 156 Cal.App.2d 191, 319 P.2d 66 (1957); Lawatch v. Lawatch, 161 Cal.App.2d 780, 327 P.2d 603 (1958); McClellan v. Mc-Clellan, 159 Cal.App.2d 225, 323 P.2d 811 (1958); Benam v. Benam, 178 Cal.App.2d 837, 3 Cal.Rptr. 410 (1960); Cardew v. Cardew, 192 Cal.App.2d 502, 13 Cal.Rptr. 620 (1961).

In light of these authorities we are constrained to the view that when the trial court, as here, has found that both parties to a divorce action have established grounds for divorce and it further finds that the legitimate objects of marriage have been destroyed, it may, in its discretion, award a divorce to both parties.

Neither does what we say here militate against that portion of the decree of the lower court which awarded alimony to the wife. The basis for liability for the payment of alimony is the granting of a divorce against the person required to pay it, R.C.M.1947, § 21-139. Nor does the award of alimony conflict with the rules set forth in our earlier decisions which involved only unilateral decrees. (Bischoff v. Bischoff, 70 Mont. 503, 226 P. 508; Damm v. Damm, 82 Mont. 239, 266 P. 410; Grush v. Grush, 90 Mont. 381, 3 P.2d 402.)

In support of the contention that the district court erred in granting each party a divorce appellant cites the case of Bissell v. Bissell, 129 Mont. 187, 284 P.2d 264 (1955), wherein this court quoted, with approval, language from the Howay and Hendricks cases, supra. If, by this reference the appellant seeks to imply that the doctrine of comparative rectitude has been tacitly recognized in Montana we need only to add that we also quoted with approval those decisions which granted dual divorces (DeBurgh v. DeBurgh, Mueller v. Mueller, supra; Flagg v. Flagg, 192 Wash. 679, 74 P.2d 189; Simmons v. Simmons, 122 Fla. 325, 165 So. 45; Burch v. Burch (3rd

Cir.) 195 F.2d 799). The Bissell case, supra, dealt primarily with the issues of sufficiency of evidence to support the finding of the trial court and the effect of the failure on the part of the appealing party to request findings of fact or to take exception to any findings made. For whatever else the case may be cited it more than amply sustains the proposition that this court does not view the doctrine of recrimination as an inflexible rule which is to be mechanically applied by the trial court with complete disregard to the social trauma out of which its development arises. We think that to give effect to the recrimination doctrine the trial court would be placed in the anomalous position of recognizing that the legitimate objects of matrimony had been destroyed, but, nonetheless, having to deny relief to the parties and thus not only maintain, but give legal sanction to, a union which may be, and often is, characterized by discord, infidelity, mental cruelty and physical violence.

Moreover, if the doctrine of comparative rectitude is resorted to for the purpose of relieving the parties of recriminatory defenses, then a unilateral decree in the lower court in favor of the respondent husband would render that court without jurisdiction to make an equitable settlement with regard to alimony, thus leaving the appellant at large in the community without means of support. In the case at bar, the lower court might very well have found, and this seems likely, in view of the evidence, that the appellant's conduct had been the more condemnatory, denied her relief, granted a divorce to the respondent only and thus precluded the payment of alimony in any amount to the appellant (R.C.M.1947, § 21-139, Grush v. Grush; Damm v. Damm, Bischoff v. Bischoff, supra).

The appellant further argues that the trial court erred in that the decree requires the husband to pay the sum of $250 monthly alimony for an indeterminate period; that such sum is not a suitable allowance for the plaintiff's support; that

the decree disregarded the circumstances of the parties and hence, the court abused its judicial discretion.

In the case of Boles v. Boles, 60 Mont. 411, 415, 199 P. 912, 913 (1921), the court stated: "Under our law the district court is vested with legal discretion in both the award of alimony and the custody of the minor children of the marriage, which will not be interfered with on appeal, unless there has been a manifest abuse thereof. [Citing authorities.] * * *

"The court granting the divorce is unquestionably the proper tribunal to determine these questions, and our lawmakers have exhibited wisdom in leaving these subjects to the discretionary action of the district court. * * *

"In the case before us the presumption is that the district court examined into and weighed all such considerations." (See also, Cummins v. Cummins, 59 Mont. 225, 195 P. 1031; Woehler v. Woehler, 107 Mont. 69, 81 P.2d 344; State ex rel. Tong v. District Court, 109 Mont. 418, 96 P.2d 918; Wandel v. Wandel, 76 Mont. 160, 248 P. 864.)

To support further the contention that the award of alimony made by the lower court was not a suitable allowance and that it was made without regard to the circumstances of the respective parties, appellant now argues that the evidence relevant thereto was "completely insufficient, misleading and self-serving". A brief review of the record leads us to conclude otherwise.

During appellant's case in chief, counsel obtained from the respondent, by stipulation, a hand-written financial statement setting out the respondent's assets and liabilities, then existing and the respondent's "gross net income" for the nine-year period immediately preceding the trial. Its admission into evidence was accompanied by the following colloquy between the court and appellant's counsel:

"MR. MOSES: Your honor, pursuant to the stipulation of the parties we offer in evidence Plaintiff's proposed Exhibit No. 1, it being a financial statement prepared by Mr. Burns;

*that it is a true and correct statement of his assets as they exist at the present time.*

"THE COURT: *And his debts and his gross net income for the years therein mentioned.*

"MR. MOSES: *Yes, Your Honor.*" Emphasis supplied.

■ We can only conclude that, inasmuch as the evidence was obtained at appellant's own behest, was presented in support of her own case, and accompanied by counsel's own statement that it was true and correct, the appellant is precluded from arguing, at this stage of the proceedings, that such evidence is "insufficient, misleading and self-serving" and does not, therefore, provide a basis for the court's findings of fact and conclusions of law entered thereon.

Plaintiff's Exhibit No. 1, to which we have just referred, sets out, inter alia, the following data, denominated "Gross net income";

"1961—$     561.93
   1960—    7,710.35
   1959—    6,584.05
   1958—  12,200.22
   1957—    5,560.87
   1956—    4,313.43
   1955—    1,186.27
   1954—    7,203.21  (loss)
   1953—    2,107.22"

■ In the face of this evidence we can hardly say that the trial court failed to take into consideration the "circumstances of parties respectively * * *" (section 21-139) and thus abused its judicial discretion, by awarding the appellant alimony in the sum of $250 monthly. As before stated, no exceptions to the findings were taken.

■ We are further constrained to the view that the decree of the lower court should not be made subject to modification by this court at this time simply because such modification is not warranted by the record, as we have just indicated.

Furthermore, such modification may be properly made in the court which rendered the decree upon a proper showing by the party seeking such modification. (Brice v. Brice, 50 Mont. 388, 147 P. 164; Boles v. Boles, 60 Mont. 411, 199 P. 912; State ex rel. Tong v. District Court, 109 Mont. 418, 96 P.2d 918). In the Brice case, which was quoted with approval in State ex rel. Tong, the court stated: "When the application is made by the wife for an increase of her allowance, it must appear that her circumstances have so changed that her needs are such as to render a larger allowance necessary, and that the husband is able, by reason of a change in his circumstances, to pay the additional allowance."

For the foregoing reasons the judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES concur.

MR. JUSTICE ADAIR dissents and reserves the right to file such dissent at a later date.

MR. JUSTICE JOHN C. HARRISON, dissenting:

I dissent. This is I believe a case covered by our statutes on recrimination and until further direction of the Legislature I believe no divorce should be granted in view of our statutes.

Section 21-118, R.C.M.1947, reads:

*"Divorces denied, on showing what.* Divorces must be denied upon showing:

"1. Connivance; 2. Collusion; 3. Condonation; 4. Recrimination."

Section 21-128, R.C.M.1947, reads:

*"Recrimination, what constitutes.* Recrimination is a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce."

My understanding of the law of this state is that up to this case, a party guilty of recrimination (equal fault) is not en-

titled to a divorce. 27A C.J.S. Divorce § 67; 17 Am.Jur. Divorce and Separation, § 263; Kuzer, Law of Marriage and Divorce (3rd Ed.) § 533; 1 Nelson, Divorce and Annulment, (2d Ed.) § 10.01; Bordeaux v. Bordeaux, 30 Mont. 36, 43, 75 P. 524.

The above authorities note certain states where recrimination is no longer an absolute bar to a divorce inasmuch as the courts have discretionary power to either make it or not, according to the circumstances of the case, but until this case Montana has not given that discretionary power to the trial courts.

Concerning the granting of a divorce to both parties, each of whom is guilty of an offense which is a cause for a divorce; the majority has cited the following cases: Flagg v. Flagg, 192 Wash. 679, 74 P. 2d 189; Simmons v. Simmons, 122 Fla. 325, 165 So. 45; Burch v. Burch, (3rd Cir.) 195 F.2d 799. I can find nothing in these cases for valid authority to support the instant case. Washington has authority for a double divorce by statute, R.C.W. § 26.08.150. In the Simmons case (Florida) while the divorce was granted to both parties it was not a point raised in the appeal. The Burch case relies on both the Florida and Washington cases and is therefore in my opinion not persuasive.