(No. 45291.

ROY MOGGED, Appellant, v. WILMA DORIS MOGGED, Appellee.

*Opinion filed October 1, 1973.*

KLUCZYNSKI and GOLDENHERSH, JJ., dissenting.

DYER, RICHMOND, MOORE & NELSON, of Hoopeston (KENNETH L. RICHMOND, of counsel), for appellant.

PAUL T. MANION and ASSOCIATES, of Hoopeston (RICHARD J. DOYLE and PAUL T. MANION, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The circuit court of Iroquois County entered a decree of divorce in favor of both parties on the grounds of mental cruelty. The appellate court affirmed (*Mogged v. Mogged (1972), 5 Ill. App. 3d 581*), and we granted leave to appeal.

In his complaint, plaintiff Roy Mogged alleged that his wife, defendant Wilma Mogged, was guilty of extreme and repeated mental cruelty. Defendant filed an answer denying the allegations of the complaint and counterclaimed for divorce from plaintiff alleging that plaintiff had been guilty of extreme and repeated mental cruelty toward her. After hearing a portion of the plaintiff's case, which included examination of the defendant as an adverse witness, the trial judge called a halt to the proceedings, over plaintiff's objection, and granted a decree of divorce to each party after stating that it was his opinion that both parties were at fault and that nothing would be accomplished by hearing further testimony.

On appeal by the plaintiff, the appellate court held that the evidence heard by the trial court was sufficient to establish extreme and repeated mental cruelty on the part of each party and stated that "the real question involved *** is whether the doctrine of recrimination in Illinois

\*\*\* should be maintained inviolate, thus automatically precluding a divorce of parties who have each been guilty of marital misconduct of equal stature toward the other, or whether that doctrine must be re-examined, and, in the light of present day reality, be rejected as unsound." (5 Ill. App. 3d at 583.) The court answered this question by concluding that the doctrine of recrimination should not be applied in those cases where, in the exercise of sound judicial discretion, it would be unwarranted. In affirming the trial court, the appellate court held further that the trial judge did not err in exercising his discretion in favor of the dual decree of divorce.

Before directing our attention to this particular issue, it is necessary to consider plaintiff's contention that the evidence did not establish that he was at fault. No useful purpose would be served in setting forth the details of the various acts on the part of both parties shown by the evidence. Both the appellate court and the trial court found that the parties were equally at fault, and, in our opinion, those findings were not contrary to the manifest weight of the evidence in the record at the time the trial judge terminated the evidentiary hearing.

The doctrine of recrimination has been the subject of extensive analysis and commentary over the years with most writers recommending its modification or abolition. (*E.g.,* Moore, Recrimination, An Examination of the Recrimination Doctrine, 20 S.C.L. Rev. 685 (1968); Thomas M. Cooley Lectures by Z. Chaffee, Jr., 47 Mich. L. Rev. 1065, 1083 (1949); Bodenheimer, Reflections on the Future of Grounds for Divorce, 8 J. Fam. L. 179; Schoenlaub, No-Fault Divorce, A Practical Approach to the Problems of Marital Failure, 27 Mo. Bar J. 579 (1971); Albers, Judicial Discretion and the Doctrine of Recrimination, 11 J. Fam. L. 737 (1972).) Also, some courts have re-examined their States' respective divorce laws and have found them susceptible of an interpretation which modified and limited the previous application of the doctrine.

Notable in this respect is the decision of the California Supreme Court in *De Burgh v. De Burgh (1952), 39 Cal. 2d 858, 250 P.2d 598*, where that court analyzed in depth the origin and development of the doctrine as well as the public-policy considerations involved. The court concluded that the California statute which was then in existence did not require the automatic application of the doctrine of recrimination but instead left to the discretion and duty of the trial judge "to determine whether or not the fault of the plaintiff in a divorce action is to be regarded as 'in bar' of the plaintiff's cause of divorce based upon the fault of the defendant." (39 Cal. 2d at 871, 250 P.2d at 605.) The court went on to state that dual divorces were permissible in appropriate circumstances. The Florida Supreme Court in *Stewart v. Stewart (1946), 158 Fla. 326, 328, 29 So. 2d 247, 249*, has also held that "[t]he application of the doctrine of recrimination like the doctrine of clean hands is a matter of sound judicial discretion dependent upon public policy, public welfare and the exigencies of the case at bar." Other courts have reached similar conclusions. (*E.g., Garner v. Garner (1973), 85 N.M. 324, 512 P.2d 84; Burns v. Burns (1965), 145 Mont. 1, 400 P.2d 642; Flagg v. Flagg (1937), 192 Wash. 679, 74 P.2d 189; Hoff v. Hoff (1882), 48 Mich. 281, 12 N.W. 160.*) Some States have enacted divorce legislation which permits dual divorces when both parties are at fault (*e.g.*, Nev. Rev. Stat., sec. 125.120; Iowa Code, sec. 598.10), and California has recently enacted a "no-fault" statute which permits divorces irrespective of fault on the part of either party (Deerings California Code Annot., Civil, par. 4507). We also note that in the Uniform Marriage and Divorce Act (1970), sec. 303(e), the National Conference of Commissioners on Uniform State Laws has recommended abolition of recrimination as a defense in divorce proceedings.

In Illinois, recrimination has long been recognized as a bar to divorce. (See *Davis v. Davis (1857), 19 Ill. 333*.) After adoption of the 1874 Divorce Act (Rev. Stat. 1874,

ch. 40, par. 1 *et seq.*), which is the basis of our existing act, this court reaffirmed the doctrine. (*Bast v. Bast (1876), 82 Ill. 584.*) The subject was reviewed again in *Duberstein v. Duberstein (1897), 171 Ill. 133,* where the court defined the doctrine in the following terms: " 'A party charged with cruelty may justify himself or herself by showing that the other party was equally to blame. *** The law is for the relief of an oppressed party, and the courts will not interfere in quarrels where both parties commit reciprocal excesses and outrages.' *** Divorce is a remedy provided for an innocent party; (5 Am. & Eng. Ency. of Law, 825, note 6); so that, when each party has committed a cause for divorce, the causes being of the same statutory character, neither can complain of the other." (171 Ill. at 144-5.) The court concluded that when parties are *in pari delicto* they must be left to themselves. The *Duberstein* decision has been uniformly applied in all subsequent cases that have examined the effect of different marital offenses as grounds for application of the doctrine. See *Peck v. Peck (1959), 16 Ill.2d 268; Levy v. Levy (1944), 388 Ill. 179; Zimmerman v. Zimmerman (1909), 242 Ill. 552;* see also *Curran v. Curran (1960), 19 Ill.2d 164.*

Whether or not the defense of recrimination should be abolished or modified in Illinois is a question involving complex public-policy considerations as to which compelling arguments may be made on both sides. For the reasons stated hereafter, we believe that these questions are appropriately within the province of the legislature, and that, if there is to be a change in the law of this State on this matter, it is for the legislature and not the courts to bring about that change.

It is well settled in this State that divorce is a remedy existing solely by grant of the General Assembly. (*People ex rel. Christiansen v. Connell (1954), 2 Ill.2d 332.*) As this court stated in *Embree v. Embree (1870), 53 Ill. 394, 395-6:* "The question of what shall constitute grounds for

granting a divorce, or whether the marriage contract shall be dissolved under any circumstances, or for any cause, is one of public policy, and belongs to the legislative, and not to the judicial, department of our government."

The argument has been advanced that the doctrine of recrimination is a product of judicial decision and that it therefore may be abolished or modified by the court if changes are warranted. We do not necessarily concur in the premise that the doctrine of recrimination is solely a creation of the judiciary. Section 1 of the 1874 Divorce Act provides in language identical to that in section 1 of our present divorce act that if the requisite causes of divorce are established "it shall be lawful for the injured party to obtain a divorce and dissolution of the marriage contract." (Rev. Stat. 1874, ch. 40, par. 1; Ill. Rev. Stat. 1971, ch. 40, par. 1.) It must be remembered that at the time the 1874 act became law, the doctrine of recrimination was recognized not only in this State but also in substantially all jurisdictions in this country. (See *Davis v. Davis (1857), 19 Ill. 333.*) Considering the historical context in which the statute was enacted it could well be presumed that by use of the singular in permitting "the injured party" to obtain a divorce, the legislature did not contemplate dual divorces in situations where both parties were at fault. But even assuming *arguendo* that the doctrine was a product of judicial decision, we do not believe that it is appropriate for the courts to modify or abolish this particular rule, which has for so many years been recognized as the law of this State in divorce cases. What we stated in *Maki v. Frelk (1968), 40 Ill.2d 193, 196-7,* is pertinent here: "Where it is clear that the court has made a mistake it will not decline to correct it, even though the rule may have been re-asserted and acquiesced in for long number of years. (*Neff v. George, 364 Ill. 306.*) No person has a vested right in any rule of law entitling him to insist that it shall remain unchanged for his benefit. (*Grasse v. Dealers Transport Co., 412 Ill. 179, 190.*) But

when a rule of law has once been settled, contravening no statute or constitutional principle, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests. (*Molitor v. Kaneland Community Unit Dist., 18 Ill.2d 11; Heidenreich v. Bremner, 260 Ill. 439, 451.*) The rule of *stare decisis* is founded upon sound principles in the administration of justice, and rules long recognized as the law should not be departed from merely because the court is of the opinion that it might decide otherwise were the question a new one. See *Prall v. Burckhartt, 299 Ill. 19, 41.*"

Furthermore, we believe it is significant that over a period of almost one hundred years during which the doctrine of recrimination as enunciated in the *Duberstein* case has been established law of this State our legislature has in no manner acted to either abolish or modify the doctrine, although it has limited its application. This occurred most recently in 1967 when the legislature amended the Act by the addition of section 8(a), which provides: "In every action for a divorce commenced on or after the effective date of this amendatory Act of 1967, the fault or conduct of the plaintiff, unless raised by the pleadings, is not a bar to the action nor a proper basis for the refusal of the decree of divorce." (Ill. Rev. Stat. 1971, ch. 40, par. 9a.) This provision, while limiting the application of the defense of recrimination, clearly recognizes its existence and contemplates its application in cases such as the one before us where recriminatory conduct on the part of the plaintiff is raised by the pleadings.

In view of the foregoing conclusions it is unnecessary to consider plaintiff's additional arguments challenging those portions of the decree dividing certain property and awarding custody of children.

Accordingly, the judgments of the appellate court and the circuit court of Iroquois County are reversed. It seems appropriate, however, in view of the fact that the action of

the trial court prevented the parties from completing the presentation of evidence, to afford an opportunity for the submission of such additional pleadings and evidence, if any, as the parties may desire and the trial court deems appropriate. We accordingly remand the cause to the circuit court of Iroquois County.

*Reversed and remanded.*

MR. JUSTICE KLUCZYNSKI, dissenting:

I would affirm the judgment of the appellate court. It is my opinion that the trial court in its sound discretion should decide whether a recriminatory defense is permissible based solely upon the facts of each case. The majority accepts the doctrine of recrimination, which would absolutely bar a divorce to either party where they are guilty of misconduct of an equal stature unless this result is modified by the legislature.

The authorities cited by the majority overwhelmingly favor the curtailment of the harsh results which emanate from the application of recrimination. It should be emphasized that this doctrine attained legal recognition by judicial decision. (*Stewart v. Stewart (1946), 158 Fla. 326, 29 So. 2d 247.*) In the present case the appellate court observed that the concept of recrimination has been traced to biblical antiquity. Most commentators agree that the early ecclesiastical courts in England began to apply the doctrine in matrimonial cases over which they exercised exclusive jurisdiction. It was, at one time, recognized in various forms in all but five American jurisdictions and may have been related to the doctrine of "unclean hands" as developed in chancery proceedings. Similar to the latter rule, recrimination acted to bar relief, *i.e.* divorce, to a party guilty of wrongdoing. See Moore, Recrimination, An Examination of the Recrimination Doctrine (1968), 20 S.C.L. Rev. 685.

The majority herein relies upon our Divorce Act as a basis for its position that any change in this doctrine must

come from the legislature. After consideration of section 1 of this statute (Ill. Rev. Stat. 1971, ch. 40, par. 1) the majority opinion concludes: "Considering the historical context in which the statute was enacted it could well be presumed that by use of the singular in permitting 'the injured party' to obtain a divorce, the legislature did not contemplate dual divorces in situations where both parties were at fault." This interpretation is unrealistic for if one spouse has committed an offense which constitutes the basis for a divorce, then the marriage may be terminated. Yet an anomaly is created by barring a divorce where both parties so disregard their marital commitment as to be guilty of similar grounds for divorce.

To further buttress its position the majority interprets section 8a of the Divorce Act (Ill. Rev. Stat. 1971, ch. 40, par. 9a) as clearly recognizing the existence of recrimination and contemplating its application to the present case. This explanation is questionable and does not support the majority's holding that solution of the primary issue before us must be delegated to legislative action. Section 8a does not define recrimination nor establish any standards as to what is to be considered marital misconduct of an equal stature. Rather section 8a would, as the majority observes, appear to attempt to limit the effect of the doctrine by necessitating that it be pleaded or thereby result in a waiver of the defense. This view is amply sustained by cases prior to enactment of section 8a which propounded the rule of law that defenses not pleaded must be considered by the court when proper evidence is presented. (*Ollman v. Ollman, 396 Ill. 176, 182; Elston v. Elston, 344 Ill. App. 233, 240.*) Section 8a may therefore be construed as an indication of legislative dissatisfaction with a defense of recrimination and an attempt thereby to procedurally limit judicial implementation of the doctrine.

I must further disagree with the majority statement that since this court's decision in *Duberstein* (171 Ill. 133) the "legislature has in no manner acted to either abolish or

modify the doctrine." In addition to my views concerning section 8a, I note that quite recently our Divorce Act was amended. At one time it provided that no divorce shall be decreed when it appears "that both parties have been guilty of adultery." (Ill. Rev. Stat. 1965, ch. 40, par. 11.) This provision was deleted. (Laws of 1967, p. 2979.) I interpret this action as legislative recognition that a marriage which exists under such circumstances should not be forced to continue by legislative fiat merely because both parties are guilty of marital fault of a similar degree. Additionally, repeal of this section suggests legislative cognizance that difficulties arising from the strict application of the doctrine of recrimination, which is a product of judicial declaration, should be left to resolution by the judiciary, for we are in a better position to determine when recrimination should be applied on the basis of each individual case.

The majority seeks support for its position that the legislature determine the issue of recrimination by referring to *Maki v. Frelk, 40 Ill.2d 193,* wherein we rejected the doctrine of comparative negligence, concluding that this issue was one for legislative action. It should be noted that in *Maki* the only specific reason advanced for rejection of a comparative negligence standard by judicial decision was the effect such acceptance would have upon several statutes which incorporated contributory negligence in their respective provisions. No similar restraint appears in our Divorce Act. For example our present section on alimony makes no mention of fault as a proper consideration in financial arrangements. These matters are to be resolved in a reasonable and just manner after consideration of the circumstances of the parties. Ill. Rev. Stat. 1971, ch. 40, par. 19.

The majority relies upon *Embree v. Embree, 53 Ill.394,* a decision of century vintage, for the proposition that dissolution of a marriage involves consideration of public policy which is determined by the legislature. But the

majority proceeds to quote from the *Maki* decision that a rule of law "ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests." Further the majority overlooks our incisive comment in *Molitor v. Kaneland Community Unit Dist., 18 Ill.2d 11,* wherein we stated at page 26, "We have repeatedly held that the doctrine of *stare decisis* is not an inflexible rule requiring this court to blindly follow precedents and adhere to prior decisions, and that when it appears that public policy and social needs require a departure from prior decisions, it is our duty as a court of last resort to overrule those decisions and establish a rule consonant with our present day concepts of right and justice. (*Bradley v. Fox, 7 Ill.2d 106, 111; Nudd v. Matsoukas, 7 Ill.2d 608, 615; Amann v. Faidy, 415 Ill. 422.*)"

This brings us to the crux of the case, *i.e.,* whether the doctrine of recrimination, as construed by the majority, is seriously prejudicial to the public interest and contrary to present concepts of right and justice in a society where the rate of marital discord is undeniably spiraling. In examining liberalized divorce legislation it was said, "Opponents also argue that such legislation is contrary to religious teachings, and that it constitutes a blow to the sanctity of marriage and tends to undermine this basic unit of our society. But can we regard a marriage as sacred, or essential to the welfare of society, when neither the disciplines of religion nor the pressures of society can preserve it, when its purposes have been abandoned, and when its continued existence makes it an instrument of misery and suffering? We cannot sincerely believe society will suffer from the enactment of legislation designed to conclude in a civilized manner marriage relations which have so far deteriorated that their very existence endangers the mental health and well being of its members. Laws regulating divorce neither determine nor control the causes of marital failure. Marriages die, not because of the ease or difficulty with

which divorces are obtained, but rather from causes unique in each marriage, personal to each litigant, and over which the law can exercise little influence." Schoenlaub, No-Fault Divorce, A Practical Approach to the Problems of Marital Failure (1971), 27 Mo. Bar J. 579, 580.

In a comment in the Journal of Family Law, the trend toward abolition or modification of the recrimination doctrine was examined. The author stated, "Whatever value may be gained in the application of the 'clean hands' doctrine in mutual fault divorces, it must be weighed against the ramifications of denial of relief. It must be remembered that if relief is denied, the state is in effect forcing two people to live together after they have decided that their continued relationship is no longer viable. It is very conceivable that this forced relationship could lead to increased hatred between parties, fostering of adulterous relationships, and destruction of home life to the detriment of the children." Albers, Judicial Discretion and the Doctrine of Recrimination (1972), 11 J. Fam. L. 737, 739.

The National Conference of Commissioners on Uniform State Laws has stated: "The legal assignment of blame is here replaced by a search for the reality of the marital situation: whether the marriage has ended in fact. The public policy embodied in this section was recognized in *DeBurgh v. DeBurgh,* 39 Cal. 2d 858, 863-64; 250 P.2d 598, 601 (1952) (Traynor, J.): 'when a marriage has failed and the family has ceased to be a unit, the purposes of family life are no longer served and divorce will be permitted.' " (Uniform Marriage and Divorce Act (1971), at 30.) The model uniform act recommends abolition of recrimination as a defense. See Uniform Marriage and Divorce Act (1971), sec. 303(e).

The Montana Supreme Court succinctly stated in *Burns v. Burns (1965), 145 Mont. 1, 8, 400 P.2d 642, 645,* "We think that to give effect to the recrimination doctrine the trial court would be placed in the anomalous position of recognizing that the legitimate objects of matrimony

had been destroyed, but, nonetheless, having to deny relief to the parties and thus not only maintain, but give legal sanction to, a union which may be, and often is, characterized by discord, infidelity, mental cruelty and physical violence."

It is my opinion that the aforementioned recitals confirm that public policy does not require the result which the majority reaches. To even attempt to preclude a divorce in this case clearly disregards the record which demonstrates that the parties have occasioned irreconcilable differences which have irretrievably damaged the marriage. By now creating the possibility that a divorce might not be granted, an injustice has been worked upon the parties. While this court has recognized the State's interest in maintaining the permanency and integrity of a marriage (*Ollman v. Ollman, 396 Ill. 176, 181*), there are situations, as here, where this interest is outweighed by that of the parties and their children. Moreover, the majority says that policy considerations exist which favor the doctrine of recrimination yet it fails to even attempt to specify any which might be convincing. Nor does the majority even expound upon what beneficial purpose will accrue to the parties or the State by setting aside the dual decrees of divorce in this case which began on April 28, 1970.

The majority remands to afford the parties an opportunity to introduce any additional evidence despite its recognition that the findings that both parties committed wrongs of an equal stature is adequately established by the present record. It is unclear what the majority contemplates. Additional evidence of mental cruelty would be useless for it has been determined that if both parties are guilty of positive acts of the same statutory nature, recrimination must bar a divorce. (*Garrett v. Garrett, 252 Ill. 318, 322.*) To say now that a divorce should be granted to the party who might ultimately be determined to have occasioned a lesser degree of mental cruelty would be

to adopt the concept of comparative rectitude, which was designed to ameliorate the harsh injustice created by recrimination. (27A C.J.S., Divorce, sec. 67 (1959); Moore, Recrimination, An Examination of the Recrimination Doctrine, 20 S.C.L. Rev. 685, 694.) This doctrine has not previously been applied in Illinois.

Thus it would appear that in order to obtain a divorce in this jurisdiction one of the present parties must plead and prove a ground for divorce not subject to a recriminatory defense of mental cruelty or have the opposing party acquiesce in the divorce by voluntarily amending the pleadings to exclude the allegation of a recriminatory defense. The former seems unlikely at this juncture, the latter might be subject to criticism as a product of collusion.

While my dissent has been lengthy, a brief summarization of several points is in order. The doctrine of recrimination is rooted in antiquity and has attained its initial status by judicial action. The present authorities are extremely critical of the harsh, unjust ramifications of this outmoded concept. Finally, our present Divorce Act does not preclude judicial modification or limitation of the doctrine, and the intent of recent legislative action can be reasonably interpreted as contrary to the strict application adopted by the majority.

This case is particularly appropriate to the comments of Justice Oliver Wendell Holmes. "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." The Path of the Law, 10 Harv. L. Rev. 457, 469 (1897).

MR. JUSTICE GOLDENHERSH joins in this dissent.