FRANK CUNEO, JR., a/k/a Francis J. Cuneo, Plaintiff and Counterdefendant-Appellee, *v.* JUDY CUNEO, a/k/a Judith Cuneo, an Incompetent, by Charley Popejoy, her Conservator, Defendant and Counterplaintiff-Appellant.

Second District   No. 78-340

Opinion filed February 7, 1980.—Rehearing denied February 11, 1980.

John Demling, Thomas A. Eckhardt, and John W. Demling, all of Demling and Jegan, of Glen Ellyn, for appellant.

Peter A. Zamis and S. Louis Rathje, both of Rathje, Woodward, Dyer and Burt, of Wheaton, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Judy Cuneo, a/k/a Judith Cuneo (the wife), and incompetent, by her conservator, Charley Popejoy, appeals from a judgment dissolving her marriage to Frank Cuneo, Jr., a/k/a Francis J. Cuneo, (the husband). The husband cross-appeals from that portion of the judgment which ordered him to pay maintenance in gross, medical bills, attorney's fees and costs.

Principally in issue are (1) whether the court erred in basing the

dissolution of the marriage on its finding that, although both parties had committed adultery, the husband's acts were subsequent to those of the wife, with the further conclusion that the wife's conduct was without provocation by the husband; and whether the sequential findings of adultery were against the manifest weight of the evidence; (2) whether the award of maintenance in gross to the wife was proper and (3) whether the award of attorney's fees was erroneous.

The parties were married on December 23, 1969, after having lived together off and on for approximately 10 years. The husband filed a complaint for divorce on June 18, 1975, alleging physical cruelty and adultery. The wife counterclaimed for divorce, alleging cruelty, mental and physical, and adultery. She later added a count for separate maintenance. The wife was adjudged incompetent prior to trial and the conservator was substituted as a party on November 22, 1976.

On December 23, 1969, the parties were married within a few weeks after the husband was divorced from his first wife. Relations between the parties worsened until they separated in June of 1974. The wife continued to stay in the home occupied by the family, while the husband moved into the home of Thea Armstrong, which she occupied with her children, also in Naperville.

Thea Armstrong first met the husband in September of 1973 upon consulting him as an attorney with regard to a divorce from her then husband Wilfred Armstrong. She began working as Frank Cuneo's secretary in December 1973. She was divorced from Wilfred in February 1974. In March or April, 1974, the husband and Thea Armstrong vacationed in Jamaica while the two Armstrong children and Amy Cuneo were in South Dakota. In February or March, 1974, the husband also gave Thea $6,000 with which to pay Wilfred for his equity in the Armstrong home. Thea described this as an advance upon her salary. Between 1975 and 1976, Thea and the husband, together with the Armstrong children and Amy Cuneo, took several vacations together. Thea estimated that she and the husband spent perhaps 20 weekends at the farm in Yuba, Wisconsin, which was jointly owned by the Cuneos as husband and wife. The first visit was in April 1974, at which time the children came along. Both Thea and the husband denied having ever engaged in sexual intercourse with each other.

Amy Cuneo, the 13-year-old daughter of the parties, testified that her mother started entertaining male friends at the house after June 1974. There was evidence that the wife had a romantic relationship with Ray Bianucci. In or around April 1975, husband hired a private detective to observe his wife. The detective, Ernest Rizzo, observed Ray Bianucci at wife's residence on April 8 and April 10, 1975. Rizzo also testified that on September 2, 1975, he went to the Holiday Inn in Glen Ellyn to Room 119

which was registered to Mr. and Mrs. Bianucci and knocked on the door. A woman whom he recognized as Judith Cuneo opened the door. A clerk at the Holiday Inn produced records which showed that Bianucci was registered for Room 123 from August 28 through September 5, 1975. Rizzo also saw the wife and Bianucci at the Holiday Inn on September 13, 1975. The trial court evidently relied on one or both of these episodes in its finding that wife committed adultery during September, 1975.

In the first stage of a bifurcated trial the trial court, on February 22, 1977, found both parties guilty of adultery, but found the husband to be the innocent party. This was based on the further finding that the husband's adultery was subsequent to that of the wife. The second hearing commenced on August 22, 1977, and on January 5, 1978, the court entered a judgment of dissolution of marriage and awarded the wife $91,800 as maintenance in gross, payable in installments of $1,000 per month commencing January 3, 1978, through December 3, 1981; and $600 per month from January 3, 1982, through January 3, 1988. The husband was also ordered to pay the wife's medical expense amounting to approximately $10,000 and attorney's fees and costs in the amount of $15,000.

■■ While both parties have assumed that the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 401) applies to the question of the grounds for divorce as well as to the matters considered in the second of the bifurcated hearings, we are compelled to address that issue. The order of February 22, 1977, which found that the husband had proved grounds for divorce, while technically not a judgment which preceded the effective date of the new act on October 1, 1977, resolved all issues related to the grounds for divorce. Section 801(b) of the new Act states that it applies "to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered." (Ill. Rev. Stat. 1977, ch. 40, par. 801(b).) As set forth in the Committee Comments to a similar provision of the Uniform Marriage and Divorce Act, section 502 (9A Unif. Laws Annot. (1979)), the clear intent of this provision is to allow the resolution of issues rendered before the effective date to stand. We believe a recent opinion of the Illinois Supreme Court supports the intent that issues already decided in the trial court before the new act became effective should not be relitigated. See *West v. West* (1979), 76 Ill. 2d 226, 233.

■■ The trial court in its order of February 22, 1977, obviously was applying the old law because the new law had not then been written. Thus we conclude that the decision that cause for dissolution of the marriage existed must be reviewed under the standards of the previous law, under which the doctrine of recrimination was a defense. (See

144

*Mogged v. Mogged* (1973), 55 Ill. 2d 221, 225.) The trial court in fact acknowledged the application of *Mogged* and purported to distinguish it on the ground that in that case both parties were seeking a divorce and the court deemed the conduct of the parties to be "equal misconduct."

■ However, the trial judge's view that the misconduct was not equal is based on his finding that the husband did not commit adultery until after the wife. On the record before us we conclude that this finding is against the manifest weight of the evidence. There is no indication from the record to distinguish between conduct prior to September 1975 and conduct which followed that date with respect to the relationship between Frank Cuneo and Thea Armstrong. Thus, there is no basis for finding that the husband committed adultery after September 1975 as opposed to before that date. Furthermore, if adultery by the wife was inferred by her being in a motel room with a man not her husband, it is inconsistent, in view of the fact that the husband and Thea Armstrong lived together for over a year before September 1975, to conclude that the husband's conduct was not adulterous prior to September 1975.

Even if the new Act were to apply, as the parties have assumed, the result would be unchanged on this record. The conduct of the wife cannot be said to be "without cause or provocation", proof of which is required to base a dissolution of the marriage under the new Act. Ill. Rev. Stat. 1977, ch. 40, par. 401(2).

We therefore reverse the judgment of dissolution of the marriage. The awards of maintenance and of medical expenses to the wife, all of which are dependent upon the decree of dissolution, are also vacated.

That portion of the judgment of the trial court which awards the wife attorney's fees, costs and fees to the guardian ad litem is, however, affirmed. See *Heinz v. Heinz* (1975), 33 Ill. App. 3d 542, 544-45.

The cause is remanded for further proceedings upon the wife's petition for separate maintenance which is pending. The hearing upon that petition shall be pursuant to the provision for legal separation under section 402 of the Illinois Marriage and Dissolution of Marriage Act. See Ill. Rev. Stat. 1977, ch. 40, par. 801(b).

Reversed in part, affirmed in part and remanded with directions.

LINDBERG and NASH, JJ., concur.